U.S. DISTRICT COURT
EASTERN DISTRICT-WI
FILED

'10 JUL 20 P5 :27

JON W. SANFILIPPO
CLERK

# UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF WISCONSIN GREEN BAY DIVISION

UNITED STATES OF AMERICA, *ex rel.*

NICOLE SPAETH,
KRISTEN RODEHEAVER,
JACULIN O'CONNOR, and
NICOLE MICHAUD,

Plaintiffs,

v.

JOHN F. SECCOMBE, DAWN NISSEN,
SCOTT WIBBEN, and PREVEA CLINIC, INC.,

Defendants.

**FILED IN CAMERA UNDER SEAL**

Case No. **10-C-0611**

**JURY TRIAL REQUESTED**

## COMPLAINT

On behalf of the United States of America, Plaintiffs-Relators Nicole Spaeth, Kristen Rodeheaver, Jaculin O'Connor, and Nicole Michaud (collectively "Relators"), by and through their attorney Michael Mishlove, allege and complain against Defendants Prevea Clinic, Inc., John F. Seccombe, Scott Wibben, and Dawn Nissen (collectively "Defendants") as follows:

### NATURE OF THE ACTION

1. Relators bring this action on behalf of the United States of America under 31 U.S.C. § 3730 of the False Claims Act, 31 U.S.C. § 3729 *et seq.*, as amended by the Fraud Enforcement and Recovery Act of 2009, P.L. 111-21, 123 Stat. 1616 ("False Claims Act"). The claims asserted by Relators arise out of unlawful

conduct on the part of Defendants, some of which conduct has been engaged in over the course of approximately 7 years, involving the submission of over 500 false claims for payment by the United States under Medicare Part B (hereinafter "Part B") for assistant-at-surgery services (hereinafter "first assistant services") purportedly rendered during cardiothoracic surgeries performed by Defendant Seccombe.

2. On information and belief and as hereinafter alleged with particularity, between 2002 and November 2009, certain defendants knowingly presented or caused to be presented, over 500 false or fraudulent claims for Medicare payment under Part B for first assistant services. On information and belief, the United States has paid more than $125,000.00 in payment thereof.

3. As is relevant to the allegations and claims herein, Part B covers surgical services performed in hospitals by cardiothoracic surgeons and also covers medically necessary, first assistant services rendered during cardiothoracic surgery when the surgical assistant is a physician or a nonphysician health practitioner eligible for payment under Part B for first assistant services (hereinafter "eligible NPP"). Pursuant to Medicare regulations, the only nonphysician practitioners eligible for payment under Part B for providing first assistant services during cardiothoracic surgery are: physician assistants, nurse practitioners, and clinical nurse specialists. Conversely, a certified surgical assistant is not an eligible NPP.

4. As alleged with particularity hereinafter, in furtherance of their fraudulent Medicare billing scheme, Defendants Seccombe and Wibben submitted, or caused to be submitted, claims for payment under Part B for first assistant services

2

rendered during surgeries performed by Defendant Seccombe, falsely identifying on such claims an eligible NPP as the assistant-at-surgery service provider, when, in fact, an ineligible NPP had served as first assistant.

5. As alleged with particularity hereinafter, in furtherance of their fraudulent Medicare billing scheme, Defendants Seccombe, Wibben and Nissen knowingly made false records and/or statements identifying Nissen or other eligible NPPs as first assistant during surgeries performed by Defendant Seccombe, when, in fact, an ineligible NPP served as first assistant; and, Defendants Seccombe and Wibben knowingly used, or caused to be used, such false records or statements to get false or fraudulent claims for Medicare payment under Part B for first assistant services paid or approved.

6. As alleged in fuller detail hereinafter, Defendant Prevea knowingly retained payments made to Prevea under Part B for first assistant services rendered during surgeries performed by Defendant Seccombe, after Prevea was informed of facts and circumstances evidencing Defendants' fraudulent Medicare billing practices.

7. Contemporaneously with the filing of this Complaint, Relators served a copy of the Summons and Complaint and provided written disclosure of substantially all material evidence and information in Relators' possession to the United States Attorney for the Eastern District of Wisconsin, and sent a copy of the aforementioned documents to the Attorney General of the United States via certified mail.

Case 1:10-cv-00611-WCG   Filed 07/20/10   Page 3 of 29   Document 1

## PARTIES

### Plaintiffs-Relators

8. Relator Nicole Spaeth is an adult citizen of the State of Wisconsin. Ms. Spaeth is a registered nurse and certified Nurse Practitioner. From July 2005 to April 2009, she was employed by Defendant Prevea and worked as a Nurse Practitioner in Prevea's cardiology department.

9. Relator Jaculin O'Connor is an adult citizen of the State of Wisconsin. Ms. O'Connor is a Registered Nurse. Ms. O'Connor is presently employed by Defendant St. Vincent Hospital and has been employed by St. Vincent continuously since 1973. At times material to the allegations herein, Ms. O'Connor worked as a Cardiac Surgical Manager at St. Vincent. At times material to the allegations herein, Ms. O'Connor was present in the operating room as a member of the surgical team during surgeries performed by Defendant Seccombe and has worked directly with Defendant Wibben and Defendant Nissen.

10. Relator Kristen Rodeheaver is an adult citizen of the State of Wisconsin. Ms. Rodeheaver is a Registered Nurse and certified Nurse Practitioner, who was employed by Prevea and worked directly with Defendant Seccombe in Prevea's cardiothoracic surgery group from 2002 to May 2005. In early January 2003, Rodeheaver was made department supervisor in Prevea's cardiothoracic surgery department, and, in that capacity, served as Defendant Nissen's supervisor for approximately 2½ years. Rodeheaver was present in the operating room when Defendant Seccombe performed surgeries from 2002-2005.

4

11. Relator Nicole Michaud is an adult citizen of the State of Wisconsin. Ms. Michaud is a Clinical Perfusionist. At times material to the allegations herein, Michaud was employed by St. Vincent Hospital and was routinely present in the operating room and served as perfusionist for surgeries performed by Defendant Seccombe.

### Defendants

12. Defendant Prevea Clinic, Inc. ("Prevea") is a domestic corporation organized and operated for the primary purpose of providing the medical services of physicians in Green Bay, Wisconsin and surrounding areas. Prevea's principal place of business is located at 2710 Executive Drive, 1st Floor, Green Bay, Brown County, WI 54304, which is in the Eastern District of Wisconsin. Prevea is registered with the Wisconsin Department of Financial Institutions to conduct business in the State of Wisconsin, and its registered agent for service of process is Larry Gille, St. Mary's/Prevea/St. Vincent Executive Offices, 1821 S. Webster Ave., P.O. Box 19047, Green Bay, WI 54307-9047. On information and belief, Prevea had sole responsibility of billings and collections with respect to fees and charges associated with professional medical services rendered by Defendant Seccombe while he is employed by Prevea.

13. Defendant John F. Seccombe ("Seccombe") is an adult citizen of the State of Wisconsin, where he is domiciled and maintains a residence. Defendant Seccombe is a cardiothoracic surgeon, board certified by the American Board of Thoracic Surgery, the American Board of Surgery, and the National Board of

5

Medical Examiners. Defendant Seccombe is an employee of Prevea Clinic, Inc. and a shareholder of Prevea Health Services, Inc., and he maintains a cardiothoracic surgery medical practice with Prevea's Cardiovascular and Thoracic Surgery practice group. At all times material to the allegations herein, Seccombe was an employee of Prevea Clinic, Inc. and a shareholder of Prevea Health Services, Inc. At times material to the claims alleged herein, Seccombe was a member of Prevea's Medical Practice Committee and was chairman of Prevea's Cardiothoracic department. Seccombe is identified in the Hospital Sisters Health Systems 2008 Annual Report as "Medical Director, The Heart Center, St. Vincent Hospital." On information and belief, all monies earned or received by Prevea or Seccombe resulting from Seccombe's performance of services related to the practice of medicine while employed by Prevea were irrevocably transferred, assigned, and conveyed to Prevea.

14. Defendant Scott Wibben is an adult citizen of the State of Wisconsin, where he is domiciled and maintains a residence. Wibben is a Certified Surgical Assistant. Wibben is currently employed by Defendant Prevea. Wibben has been employed by Prevea as a surgical assistant since approximately 2002.

15. Defendant Dawn Nissen is an adult citizen of the State of Wisconsin, where she is domiciled and maintains a residence. Defendant Nissen is a Nurse Practitioner, and is currently employed by Defendant Prevea Health. Nissen has been employed by Prevea since approximately 2003.

6

## JURISDICTION AND VENUE

16. This is an action brought under the False Claims Act, 31 U.S.C. § 3729, *et seq.* This Court has subject matter jurisdiction over the claims asserted herein pursuant to 28 U.S.C. § 1331.

17. This Court has personal jurisdiction over Defendant Prevea Clinic, Inc. pursuant to 31 U.S.C. § 3732(a), which authorizes nationwide service of process, and because Prevea is a domestic corporation that maintains its principal place of business in Brown County, Wisconsin.

18. This Court has personal jurisdiction over Defendants Seccombe, Wibben and Nissen pursuant to 31 U.S.C. § 3732(a), which authorizes nationwide service of process, and because each of these defendants is a natural person domiciled in the State of Wisconsin.

19. This action is properly venued in the Eastern District of Wisconsin pursuant to 31 U.S.C. § 3732(a), which provides, in pertinent part: "Any action under section 3730 may be brought in any judicial district in which the defendant or, in the case of multiple defendants, any one defendant can be found, resides, transacts business, or in which any act proscribed by section 3729 occurred." Defendants Seccombe, Wibben and Nissen reside in the Eastern District of Wisconsin; Defendant Prevea Clinic, Inc. transacts business in the Eastern District of Wisconsin; and, the acts alleged herein proscribed by 31 U.S.C. § 3729 occurred in the Eastern District of Wisconsin.

7

## GENERAL ALLEGATIONS

20. Medicare reimburses both hospitals and surgeons for inpatient, outpatient, and professional care for cardiothoracic surgery. The inpatient component is reimbursed through the prospective payment system (Medicare Part A) or the Ambulatory Payment Classification system for outpatient services. Surgeons are reimbursed under the physician fee schedule (Part B) for professional services, such as diagnosis, surgery, and consultation, when provided in the office or an institution, such as a hospital. In addition, subject to the provisions of Part B, surgeons can bill, and Part B does pay, separately for certain nonphysician healthcare practitioners ("NPP") who provide certain medically necessary services to patients in connection with services rendered by the surgeon.

21. Medicare makes Part B payments for first assistant services under the physician fee schedule when first the assistant services are performed by a physician or by an NPP eligible to receive such payments. NPPs eligible to receive Medicare payment under Part B for first assistant services are Physician Assistants, Nurse Practitioners, and Clinical Nurse Specialists. Surgical technicians are not eligible for Medicare payment under Part B for first assistant services.

22. After obtaining his medical degree in 1990, Seccombe worked at the Mayo Clinic, where he completed a general surgery residency from 1990 to 1996 and then completed a cardiothoracic surgery residency from 1996 to 1999.

23. Defendant Seccombe commenced employment with Prevea in or about 2002 and has been continuously employed by Prevea from that time to the present.

8

24. At times while employed by Prevea, Seccombe's compensation was based, in part, on the amount billed for his services (including amounts billed for first assistant services rendered by eligible NPPs) during cardiothoracic surgeries.

25. At times while employed by Prevea, Seccombe's compensation was based, in part, on the amount Prevea was paid for his services (including amounts Prevea was paid for first assistant services rendered by eligible NPPs) during cardiothoracic surgeries.

26. Seccombe became acquainted with Defendant Wibben and worked with him during cardiovascular surgeries at the Mayo Clinic At the time when Seccombe became acquainted with Wibben, Wibben was employed as a surgical assistant working with the clinic's cardiovascular surgery team. After he joined Prevea, Seccombe recruited Wibben to Prevea.

27. Wibben commenced employment with Prevea as a surgical assistant working with Prevea's cardiothoracic surgery practice group in or around 2002. Wibben has been employed by Prevea in that capacity continuously from the start of his employment to the present. At all times while employed by Prevea, Wibben has worked under the direction of Seccombe.

28. In his capacity as surgical assistant, Wibben's principal job responsibility is to assist cardiothoracic surgeons during surgery.

29. Throughout his employment by Prevea, Wibben customarily and routinely served as first assistant-at-surgery during surgeries performed by Prevea's cardiothoracic surgeons, including, but not limited to, Seccombe. Wibben is not an eligible NPP, nor was he an eligible NPP at any time material to the claims alleged herein.

9

30. In addition to serving as first assistant-at-surgery, Wibben also prepared records for use by Prevea's billing department (hereinafter referred to as "Cardiothoracic Billing Records") providing information regarding surgeries performed by Prevea's cardiothoracic surgeons — including, but not limited to, the identities of the surgeon and first assistant-at surgery, and the surgical procedures performed during the operation — that was necessary for computing physician fees and other charges related to such surgeries and for submitting claims for payment. After preparing the Cardiothoracic Billing Records, Wibben transmitted them to Prevea's billing department.

31. When preparing certain Cardiothoracic Billing Records, notwithstanding the fact that he served as first assistant-at-surgery, Wibben regularly identified an eligible NPP, instead of himself, as first assistant-at-surgery on such Cardiothoracic Billing Records. Wibben purposefully and knowingly misrepresented an eligible NPP as first assistant-at-surgery on Cardiothoracic Billing Records when, in fact, the identified NPP did not serve in that capacity during surgery, with the intent of getting false claims for payment for first assistant services paid under Part B.

32. Nissen commenced employment with Prevea as a nurse assigned to Prevea's cardiothoracic surgery department in or around 2003. At all times while employed by Prevea, Nissen has worked under the direction of Seccombe.

33. At the time she began her employment with Prevea, Nissen was not an eligible NPP. Nissen completed a Masters Degree program in nursing in or around May 2005, Nissen became an eligible NPP in or around September 2005.

10

34. Subsequent to Nissen becoming an eligible NPP, Wibben regularly identified her as first assistant-at-surgery on Cardiothoracic Billing Records despite the fact that she did not serve as first assistant-at-surgery during the surgery to which such Records related.

35. As chairman of Prevea's cardiothoracic surgery department, Seccombe was involved in determining the compensation that would be paid to Prevea employees assigned to work in the cardiothoracic surgery department.

36. Sometime after September 2005, Seccombe caused Prevea to change the terms of Nissen's compensation package so as to provide for additional compensation beyond her base salary for surgeries with respect to which claims were made and/or paid for first assistant services purportedly rendered by her during cardiothoracic surgeries.

37. At times while employed by Prevea, Nissen was paid additional compensation beyond her base salary for surgeries with respect to which claims were made and/or paid for first assistant services purportedly rendered by her during cardiothoracic surgeries performed by Seccombe.

38. As hereinafter alleged with particularity, Seccombe knowingly dictated Operative Reports pertaining to surgeries he performed that falsely name as first assistant during the surgery referred to in the Operative Report a NPP eligible for Medicare payment for assistant-at-surgery services when the identified NPP did not function in that capacity during the surgery.

39. As hereinafter alleged with particularity, Seccombe knowingly dictated Operative Reports pertaining to surgeries he performed that falsely name as first assistant

11

during the surgery referred to in the Operative Report a NPP eligible for Medicare payment for assistant-at-surgery services when the identified NPP did not function in that capacity during the surgery with the intent and purpose of fraudulently obtaining Medicare payments for assistant-at-surgery services under Part B.

40. As hereinafter alleged with particularity, Seccombe knowingly dictated Operative Reports pertaining to surgeries he performed that falsely name as first assistant during the surgery referred to in the Operative Report a NPP eligible for Medicare payment for assistant-at-surgery services when the identified NPP did not function in that capacity during the surgery in furtherance of the conspiracy among Seccombe, Wibben, and Nissen to fraudulently obtain Medicare payments for assistant-at-surgery services under Part B.

41. In addition to making false statements and reports in Operative Reports he dictated, Seccombe knowingly wrote post-operative notes for patient medical-record charts pertaining to surgeries he performed, that falsely identify as first assistant during the surgery referred to in the note a NPP eligible for Medicare payment for assistant-at-surgery services when the identified NPP did not function in that capacity during the surgery.

42. Seccombe knowingly wrote post-operative notes for patient medical-record charts pertaining to surgeries he performed, that falsely identify as first assistant during the surgery referred to in the note a NPP eligible for Medicare payment for assistant-at-surgery services when the identified NPP did not function in that

12

capacity during the surgery with the intent and purpose of fraudulently obtaining Medicare payments for assistant-at-surgery services under Part B.

43. Seccombe knowingly wrote post-operative notes for patient medical-record charts pertaining to surgeries he performed, that falsely identify as first assistant during the surgery referred to in the note a NPP eligible for Medicare payment for assistant-at-surgery services when the identified NPP did not function in that capacity during the surgery in furtherance of the conspiracy among Seccombe, Wibben, and Nissen to fraudulently obtain Medicare payments for assistant-at-surgery services under Part B.

44. On occasion, Defendant Nissen knowingly wrote post-operative notes for patient medical-record charts pertaining to surgeries performed by Defendant Seccombe, that falsely name as first assistant during the surgery referred to in the note a NPP eligible for Medicare payment for assistant-at-surgery services when the identified NPP did not function in that capacity during the surgery.

45. Nissen knowingly wrote post-operative notes for patient medical-record charts pertaining to surgeries performed by Seccombe, that falsely name as the first assistant during the surgery referred to in the note a NPP eligible for Medicare payment for assistant-at-surgery services when the identified NPP did not function in that capacity during the surgery, with the intent and purpose of fraudulently obtaining Medicare payments for assistant-at-surgery services under Part B.

46. Nissen knowingly wrote post-operative notes for patient medical-record charts pertaining to surgeries performed by Seccombe, that falsely name as first assistant

13

during the surgery referred to in the note a NPP eligible for Medicare payment for assistant-at-surgery services when the identified NPP did not function in that capacity during the surgery, in furtherance of the conspiracy among Seccombe, Wibben, and Nissen to fraudulently obtain Medicare payments for assistant-at-surgery services under Part B.

47. As hereinafter alleged with particularity, Wibben knowingly prepared billing documents pertaining to surgeries performed by Seccombe that falsely name as first assistant during the surgery referred to in the billing document a NPP eligible for Medicare payment for assistant-at-surgery services under Part B when the named NPP did not function in that capacity during the surgery referred to in the billing documents.

48. Wibben knowingly prepared billing documents pertaining to surgeries performed by Seccombe that falsely name as first assistant during the surgery referred to in the billing document a NPP eligible for Medicare payment for assistant-at-surgery services under Part B when the named NPP did not function in that capacity during the surgery referred to in the billing documents with the intent and purpose of fraudulently obtaining Medicare payments for assistant-at-surgery services under Part B.

49. Wibben knowingly prepared billing documents pertaining to surgeries performed by Seccombe that falsely name as first assistant during the surgery referred to in the billing document a NPP eligible for Medicare payment for assistant-at-surgery services under Part B when the named NPP did not function in that capacity during the surgery referred to in the billing documents in furtherance of the

14

conspiracy among Seccombe, Wibben, and Nissen to fraudulently obtain Medicare payments for assistant-at-surgery services under Part B.

### The 8/3/06 Surgery

50. On August 3, 2006, Defendant Seccombe performed cardiothoracic surgery at St. Vincent Hospital on a 78 year old male patient and Medicare beneficiary ("the 8/3/06 Surgery"). The Operating Room Record ("the 8/3/06 Operating Room Record") signed by C. Rolf, R.N., who was one of the circulating nurses staffing the 8/3/06 Surgery and was present in the operating room as a member of the surgical team during the procedure, indicates that the procedure started at 8:00 a.m. and was completed at 2:45 p.m.

51. The section of the 8/3/06 Operating Room Record captioned "PERSONNEL" identifies the "Surgeon" as "J. Seccombe, MD"; the "Assistant" as "S. Wibben, CSA"; the "Anesthesiologist" as "B. Skaletski, MD"; the "Circulator[s]" as "C. Rolf, RN" and "M. Bytnar, RN"; the "Scrub Nurse[s]" as "J. Royea, ST" and "J. Castillo, ST," the "Perfusionist" as "N. Michauld"; the "Anesthesia Tech" as "K. Smith, AT"; and also identifies as "Observers/Tech Advisors": "M. Hamilton, ST, J. O'Conner [sic], RN, P. Saros, MD, D. Milkowski, ST."

52. Defendant Nissen is not identified or otherwise named in the Personnel section of the 8/3/06 Operating Room Record; nor does the 8/3/06 Operating Room Record otherwise indicate in any way that Nissen was present in the operating room at any time during the 8/3/06 Surgery. On information and belief, Defendant Nissen was not present in the operating room at any time during the 8/3/06 Surgery.

15

53. Although Defendant Nissen was not present in the operating room at any time during the 8/3/06 Surgery, the Operative Report Defendant Seccombe dictated for the 8/3/06 Surgery falsely identifies "Dawn Nissen, NP-C" as "First Assistant."

54. The surgical procedures listed in the Operative Report Defendant Seccombe dictated for the 8/3/06 Surgery are "I. Arotic valve replacement —25 mm porcine valve Medtronic Mosiac Ultra. Serial #25AO5J5848"; "II. Coronary artery bypass grafting x4 [with 1 left internal mammary artery graft and 3 saphenous vein grafts]"; and "IIII. Left atrial appendage ligation."

55. Defendant Seccombe's false identification of Defendant Nissen as first assistant in the Operative Report he dictated for the 8/3/06 Surgery was made intentionally and with knowledge that his identification of Nissen as first assistant was false.

56. Defendant Seccombe falsely identified Defendant Nissen as first assistant in the Operative Report for the 8/3/06 Surgery he dictated with the intent and purpose of obtaining Medicare payment under Part B for first assistant services performed during the 8/3/06 Surgery.

57. On information and belief, Defendant Wibben knowingly prepared documents that falsely identified Defendant Nissen as first assistant during the 8/3/06 Surgery, for use in billing and submitting claims for Medicare payment under Part B for services rendered during the 8/3/06 Surgery.

16

58. On information and belief, Defendants Seccombe and Wibben submitted, or caused to be submitted, a claim for Medicare payment under Part B for first assistant services claimed to have been performed by Defendant Nissen during the 8/3/06 Surgery.

59. On information and belief, based on the claim for Medicare payment for first assistant services during the 8/3/06 Surgery submitted or caused to be submitted by Defendants Seccombe and Wibben, Medicare paid approximately $473.00 for first assistant services claimed to have been performed by Defendant Nissen during the 8/3/06 Surgery.

**The 3/3/08 Surgery.**

60. On March 3, 2008, Defendant Seccombe performed cardiothoracic surgery at St. Vincent Hospital on a 68 year old male patient and Medicare beneficiary ("the 3/3/08 Surgery"). The Operating Room Record signed by B. Furst ("the 3/3/08 Operating Room Record"), who was one of the circulating nurses staffing the 3/3/08 Surgery and was present in the operating room as a member of the surgical team during the procedure, indicates that the procedure started at 7:54 a.m. and was completed at 12:55 p.m.

61. The section of the 3/3/08 Operating Room Record captioned "PERSONNEL," in part, identifies the "Surgeon" as "Dr. Seccombe"; the "Assistant" as "1. S. Wibben CSA . . . 2. D. Nissen APNP"; the "Anesthesiologist" as "Dr. Sharma"; the "Circulator[s]" as "1. B. Furst RN . . . 2. C. Rolf RN . . . Relief: M. Cartier RN"; the "Scrub Tech[s]" as "1. B. Coleman ST . . . 2. J. Bleick ST"; the

17

"Perfusionist" as "N. Michaud CCP"; the "Anesthesia Tech" as "K. Smith AT . . ."; and also identifies as "Observers/Tech Advisors": "M. Cartier RN."

62. Although the first listed Assistant on the 3/3/08 Operating Room Record is Defendant Wibben, the Operative Report Defendant Seccombe dictated for the 3/3/08 Surgery falsely identifies "Dawn Nissen, NP-C" as "First Assistant."

63. The surgical procedures listed in the Operative Report Defendant Seccombe dictated for the 3/3/08 Surgery are "I. Arotic valve replacement — Edwards pericardial tissue valve — 23 mm, serial number 1424464"; "II. Coronary artery bypass grafting times 4 [with 1 left internal thoracic artery graft and 3 saphenous vein grafts]"; and "IIII. Stapling of left atrial appendage."

64. On information and belief, Defendant Nissen did not perform first assistant services that were medically necessary and directly required for Defendant Seccombe's performance of the surgical procedures listed in the Operative Report he dictated for the 3/3/08 Surgery.

65. Defendant Seccombe's false identification of Defendant Nissen as first assistant in the Operative Report he dictated for the 3/3/08 Surgery was made intentionally and with knowledge that his identification of Nissen as first assistant was false.

66. Defendant Seccombe falsely identified Defendant Nissen as first assistant in the Operative Report he dictated for the 3/3/08 Surgery with the intent and purpose of obtaining Medicare payment under Part B for first assistant services performed during the 3/3/08 Surgery.

18

67. On information and belief, Defendant Wibben knowingly prepared documents that falsely identified Defendant Nissen as first assistant during the 3/3/08 Surgery, for use in billing and submitting claims for Medicare payment under Part B for services rendered during the 3/3/08 Surgery.

68. On information and belief, Defendants Seccombe and Wibben submitted, or caused to be submitted, a claim for Medicare payment under Part B for first assistant services claimed to have been performed by Defendant Nissen during the 3/3/08 Surgery.

69. On information and belief, based on the claim for Medicare payment for first assistant services during the 3/3/08 Surgery submitted or caused to be submitted by Defendants Seccombe and Wibben, Medicare paid approximately $468.00 for first assistant services claimed to have been performed by Defendant Nissen during the 3/3/08 Surgery.

**The 8/4/09 Surgery.**

70. On August 4, 2009, Defendant Seccombe performed cardiothoracic surgery at St. Vincent Hospital on a 76 year old female patient and Medicare beneficiary ("the 8/4/09 Surgery"). The Perioperative Nursing Record for the 8/4/09 Surgery ("the 8/4/09 Perioperative Nursing Record") indicates that the procedure started at 7:49 a.m. and stopped 12:42 p.m.

19

71. The first listed Assistant Provider on the 8/4/09 Perioperative Nursing Record is "Wibben, Scott"; the second listed Assistant Provider on the 8/4/09 Perioperative Nursing Record is "Nissen Dawn."

72. Although the first listed Assistant Provider on the 8/4/09 Perioperative Nursing Record is Defendant Wibben, the Operative Report Defendant Seccombe dictated for the 8/4/09 Surgery falsely identifies "Dawn Nissen, NP-C" as "First Assistant."

73. The surgical procedures listed in the Operative Report Defendant Seccombe dictated for the 8/4/09 Surgery are: "I.Redo median sternotomy"; "II. Mitral valve replacement — 27 mm Edwards pericardial tissue valve, serial #2116884"; and "IIII. Oversewing of left atrial appendage."

74. On information and belief, Defendant Nissen did not perform first assistant services that were medically necessary and required for Defendant Seccombe's performance of the surgical procedures listed in the Operative Report he dictated for the 8/4/09 Surgery.

75. Defendant Seccombe's false identification of Defendant Nissen as first assistant in the Operative Report he dictated for the 8/4/09 Surgery was made intentionally and with knowledge that his identification of Nissen as first assistant was false.

76. Defendant Seccombe falsely identified Defendant Nissen as first assistant in the Operative Report he dictated for the 8/4/09 Surgery with the intent and purpose of

20

obtaining Medicare payment under Part B for first assistant services performed during the 8/4/09 Surgery.

77. On information and belief, Defendant Wibben knowingly prepared documents that falsely identified Defendant Nissen as first assistant during the 8/4/09 Surgery, for use in billing and submitting claims for Medicare payment under Part B for services rendered during the 8/4/09 Surgery.

78. On information and belief, Defendants Seccombe and Wibben submitted, or caused to be submitted, a claim for Medicare payment under Part B for first assistant services claimed to have been performed by Defendant Nissen during the 8/4/09 Surgery.

79. On information and belief, based on the claim for Medicare payment for first assistant services during the 8/4/09 Surgery submitted or caused to be submitted by Defendants Seccombe and Wibben, Medicare paid approximately $277.00 for first assistant services claimed to have been performed by Defendant Nissen during the 8/4/09 Surgery.

## VIOLATIONS OF THE FALSE CLAIMS ACT

### PRESENTING OR CAUSING TO BE PRESENTED FALSE OR FRAUDULENT CLAIMS FOR PAYMENT IN VIOLATION OF 31 U.SC. § 3729(a)(1) AND/OR 31 U.S.C. § 3729(a)(1)(A)

80. Plaintiffs re-allege and incorporate by reference as if set forth in full here all of the preceding paragraphs of this Complaint.

81. At and during times material to the claims asserted herein prior to May 20, 2009, Defendant Seccombe knowingly presented or caused to be presented to an officer

21

Case 1:10-cv-00611-WCG   Filed 07/20/10   Page 21 of 29   Document 1

or employee of the United States government false or fraudulent claims, seeking reimbursement for assistant at surgery services under Part B, for payment or approval.

82. At and during times material to the claims asserted herein after May 20, 2009, Defendant Seccombe knowingly presented or caused to be presented false or fraudulent claims for payment or approval.

83. Defendant Seccombe's hereinabove-alleged conduct prior to May 20, 2009 violated 31 U.S.C. § 3729(a)(1); and Defendant Seccombe's hereinabove-alleged conduct after May 20, 2009 violated 31 U.S.C. § 3729(a)(1)(A).

84. In performing the hereinabove-alleged acts, Defendant Seccombe defrauded the United States of America by knowingly presenting, or causing to be presented, to one or more officers, employees or agents of the United States of America, false and fraudulent claims for payment or approval, in contravention of the False Claims Act to the damage of the treasury of the United States of America, by causing the United States to pay out money it was not obligated to pay.

85. As a result of Defendant Seccombe's conduct as alleged herein, the United States of America sustained damages in excess of $150,000.00.

### MAKING, USING, OR CASUING TO BE MADE OR USED FALSE RECORDS OR STATEMENTS TO GET A FALSE OR FRAUDULENT CLAIM PAID OR APPROVED IN VIOLATION OF 31 U.S.C. § 3729(a)(2) AND/OR 31 U.S.C. § 3729(a)(1)(B).

86. Plaintiffs re-allege and incorporate by reference as if set forth in full here all of the preceding paragraphs of this Complaint.

22

87. At and during times material to the claims asserted herein prior to June 7, 2009, Defendant Seccombe knowingly made, used, and/or caused to be made or used false records or statements to get false or fraudulent claims seeking reimbursement for assistant at surgery services under Part B, paid or approved.

88. At and during times material to the claims asserted herein prior to June 7, 2009, Defendant Wibben knowingly made, used, and/or caused to be made or used false records or statements to get false or fraudulent claims seeking reimbursement for assistant at surgery services under Part B, paid or approved.

89. At and during times material to the claims asserted herein prior to June 7, 2009, Defendant Nissen knowingly made, used, and/or caused to be made or used false records or statements to get false or fraudulent claims seeking reimbursement for assistant at surgery services under Part B, paid or approved.

90. At and during times material to the claims asserted herein after June 7, 2009, Defendant Seccombe knowingly made, used, and/or caused to be made or used false records or statements material to false or fraudulent claims seeking reimbursement for assistant at surgery services under Part B.

91. At and during times material to the claims asserted herein after June 7, 2009, Defendant Wibben knowingly made, used, and/or caused to be made or used false records or statements material to false or fraudulent claims seeking reimbursement for assistant at surgery services under Part B.

92. At and during times material to the claims asserted herein after June 7, 2009, Defendant Nissen knowingly made, used, and/or caused to be made or used false

23

records or statements material to false or fraudulent claims seeking reimbursement for assistant at surgery services under Part B.

93. Defendant Seccombe's, Wibben's, and Nissen's hereinabove-alleged conduct prior to June 7, 2009 violates 31 U.S.C. § 3729(a)(2); and Defendant Seccombe's, Wibben's, and Nissen's hereinabove-alleged conduct after June 7, 2009 violates 31 U.S.C. § 3729(a)(1)(B).

94. By virtue of the acts described above, Defendants have knowingly made, used or caused to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the United States of America, and/or have knowingly made, used or caused to be made or used, a false record or statement material to a false or fraudulent claim in contravention of the False Claims Act to the damage of the treasury of the United States of America, by causing it to pay out money it was not obligated to pay.

95. As a result of Defendants Seccombe's, Wibben's, and Nissen's conduct as alleged herein, the United States of America sustained damages in excess of $150,000.00.

**CONPSIRACY IN VIOLATION OF 31 U.S.C. § 3729(a)(3) AND/OR 31 U.S.C. § 3729(a)(1)(C)**

96. Plaintiffs re-allege and incorporate by reference as if set forth in full here all of the preceding paragraphs of this Complaint.

97. At and during times material to the claims asserted herein prior to May 20, 2009, Defendants Seccombe and Wibben conspired and agreed to present or cause to be presented to an officer or employee of the United States government false or fraudulent claims, seeking reimbursement for assistant at surgery services under Part B, for payment or approval.

24

98. At and during times material to the claims asserted herein prior to May 20, 2009, Defendants Seccombe and Nissen conspired and agreed to present or cause to be presented to an officer or employee of the United States government false or fraudulent claims, seeking reimbursement for assistant at surgery services under Part B, for payment or approval.

99. At and during times material to the claims asserted herein prior to May 20, 2009, Defendants Seccombe, Wibben, and Nissen conspired and agreed to present or cause to be presented to an officer or employee of the United States government false or fraudulent claims, seeking reimbursement for assistant at surgery services under Part B, for payment or approval.

100.    At and during times material to the claims asserted herein after May 20, 2009, Defendants Seccombe and Wibben conspired and agreed to present or cause to be presented false or fraudulent claims for payment or approval.

101.    At and during times material to the claims asserted herein after May 20, 2009, Defendants Seccombe and Nissen conspired and agreed to present or cause to be presented false or fraudulent claims, seeking reimbursement for assistant at surgery services under Part B, for payment or approval.

102.    At and during times material to the claims asserted herein after May 20, 2009, Defendants Seccombe, Wibben, and Nissen conspired and agreed to present or cause to be presented false or fraudulent claims, seeking reimbursement for assistant at surgery services under Part B, for payment or approval.

25

103.     Defendants Seccombe, Wibben and Nissen's hereinabove alleged conduct prior to May 20, 2009 violates 31 U.S.C. § 3729(a)(3); and their hereinabove-alleged conduct after May 20, 2009 violates 31 U.S.C. § 3729(a)(1)(C).

104.     By virtue of the acts described above, Defendants have engaged in unlawful conspiracy in contravention of the False Claims Act to the damage of the treasury of the United States of America, by causing it to pay out money it was not obligated to pay.

105.     As a result of Defendants Seccombe's, Wibben's, and Nissen's conduct as alleged herein, the United States of America sustained damages in excess of $150,000.00

## KNOWINGLY AND IMPROPERLY AVOIDING AN OBLIGATION TO PAY MONEY TO THE GOVERNMENT IN VIOLATION OF 31 U.S.C. § 3729(a)(1)(G)

106.     Plaintiffs re-allege and incorporate by reference as if set forth in full here all of the preceding paragraphs of this Complaint

107.     During the spring of 2007, Relator Rodeheaver met with Prevea's Director of Operations Brian Charlier and informed him of Defendant Wibben's customary role as first assistant during surgeries performed by Defendant Seccombe. The information provided to Mr. Charlier by Ms. Rodeheaver put Prevea on reasonable notice that it had improperly received and was improperly retaining Medicare payments based on false or fraudulent claims for Medicare payment under Part B for first assistant services, submitted, or caused to be submitted by Defendant Seccombe.

26

108.    At and during times after May 20, 2009, Defendant Prevea acted in deliberate ignorance of, or in reckless disregard of, the truth of information that Prevea had received payments for assistant at surgery services under Part B, based on false or fraudulent claims for such services that were presented or caused to be presented by Defendant Seccombe.

109.    Specifically, Prevea knowingly and improperly avoided its obligation to repay money it had been paid for assistant at surgery services under Part B based on false or fraudulent claims for such services that were presented or caused to be presented by Defendant Seccombe.

110.    Defendant Prevea Clinic Inc.'s hereinabove-alleged conduct after May 20, 2009 violates 31 U.S.C. § 3729(a)(1)(G).

111.    By virtue of the acts described above, Defendant Prevea Clinic Inc. has engaged in conduct in contravention of the False Claims Act to the damage of the treasury of the United States of America, through its avoidance of its obligation to repay money to the United States that it had been paid for assistant at surgery services under Part B based on false or fraudulent claims for such services that were presented or caused to be presented by Defendant Seccombe.

112.    As a result of Defendant Prevea Clinic Inc.'s conduct as alleged herein, the United States of America sustained damages in an amount to be established through discovery and at trial.

WHEREFORE, Plaintiffs request the following relief:

(a) Judgment in favor of the United States of America Plaintiff-Relators against Defendants, jointly and severally, by reason of the violations of the False Claims Act as

27

set forth above, awarding the United States and Plaintiff-Relators compensatory damages for all losses sustained by the Government as a result of Defendants' conduct as alleged herein, plus a civil penalty of not less than Five Thousand Dollars ($5,000.00), and not more than the maximum penalty provided for under the False Claims Act for each violation, plus three times the amount of damages which the United States Government has sustained, pursuant to 31 U.S.C. § 3729(a);

(b) Judgment in favor of the United States of America Plaintiff-Relators against Defendants, jointly and severally, by reason of the violations of the False Claims Act as set forth above, awarding Relators, as the Qui Tam plaintiffs, the maximum amount allowed pursuant to 31 U.S.C. § 3730(d) of the Federal False Claims Act on the United States' recovery;

(c) Judgment in favor of the United States of America Plaintiff-Relators against Defendants, jointly and severally, by reason of the violations of the False Claims Act as set forth above, awarding the United States and Relators all reasonable expenses which the Court finds to have been necessarily incurred, plus reasonable attorneys' fees and costs;

(d) Judgment in favor of the United States of America Plaintiff-Relators against Defendants, jointly and severally, by reason of the violations of the False Claims Act as set forth above, awarding the United States and Relators punitive damages on all causes of action to the extent allowable by law; and

(e) Such other and further relief as the Court deems proper.

[THE REMAINDER OF THIS PAGE IS INTENTIONALLY LEFT BLANK]

28

Dated: July 20, 2010

Respectfully submitted,

Michael Mishlove
Michael Mishlove Bar Number 1030751
Attorney for Plaintiff-Relators
GONZALEZ SAGGIO & HARLAN LLP
225 E. Michigan Street, Fourth Floor
Milwaukee, WI 53202
Telephone: (414) 277-8500
Fax: (414) 277-8521
E-mail: mchael_mishlove@gshllp.com

29